**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

Case No. 3:25-cv-363-DJH

**DAWSON BLEVINS**                                                                                    **PLAINTIFF,**

**v.**

**JAMES CAMERON WRIGHT,** *et al.*                                                        **DEFENDANTS.**

---

**MOTION TO DISMISS BY DEFENDANTS, PHILLIP BURNETT, JR, CHAD WHITE,
and MICHAEL ROGERS**

---

Come the Defendants, Kentucky State Police Commissioner Phillip Burnett, Jr., Deputy Commissioner Chad White, and Lieutenant Colonel Michael Rogers (collectively "Defendants" or "KSP Command"), by counsel, pursuant to FRCP 12(b)(6), and move the Court to dismiss the claims because the Complaint fails to state a claim upon which relief can be granted, as to these Defendants.

The Plaintiff has sued the above-named Defendants based on their current job titles in the Kentucky State Police ("KSP"). The Plaintiff brings suit under the theory of "supervisory liability," alleging that each Defendant "'implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendant Wright." [Complaint, R. 1, at 3]. However, Plaintiff provides no relevant factual basis for these claims. Even when the facts of the Complaint are taken as true, for the purpose of this motion, they fail to state a violation of 42 U.S.C. § 1983 by these Defendants. The KSP Command Defendants now move this Court to dismiss this action against each of them.

1

## **FACTS ALLEGED IN THE COMPLAINT**

This is a civil rights action against several KSP Troopers under 42 U.S.C. § 1983 for alleged Fourth and Fourteenth Amendment violations. [R. 1, at 17-20]. The Complaint details four prior instances of alleged excessive force by Trooper James C. Wright, although the Complaint does not claim Wright has been convicted of a crime or found civilly liable in any of those incidents. [*Id*. at 6-13]. The first occurred on March 5, 2020, involving Justin Holcomb (Holcomb). [Id. at 6-7]. The Complaint says that Wright threw Holcomb to the ground and "gratuitously struck him." [*Id*.]. The Complaint alleges that the KSP Command Defendants knew about Wright's conduct and did not take corrective action. [*Id*.]. The Complaint neglects to mention how the incident was allegedly reported to the KSP Command Defendants and does not mention that neither Commissioner Burnett nor Lt. Col. Rogers was in his current position on March 5, 2020. [*See, e.g.,* Personnel Records attached hereto as Exhibit A[1]].

The next incident occurred on April 2, 2020, involving Thomas Davis (Davis). [R. 1 at 7]. The Complaint says Wright thew Davis out of his car and onto the ground, then "gratuitously struck him." [*Id*.]. The Complaint alleges that KSP Command Defendants knew about Wright's conduct and did not take corrective action. [*Id*.]. Again, the Complaint neglects to mention how the incident was allegedly reported to the KSP Command Defendants and does not mention that neither Commissioner Burnett nor Lt. Col. Rogers was in his current position on April 2, 2020. [*See, e.g.,* Exhibit A].

The Complaint alleges that, on April 9, 2020, Wright was involved in a use of force against Alex Hornback (Hornback). [R. 1, at 7-11]. The Complaint says that "Defendant Wright threw

---

[1] The personnel records are "public records" pursuant to the Kentucky Open Records Act, Ky. Rev. Stat. §§ 61.870 to 61.884. District courts may "take judicial notice of "public records" without converting a motion to dismiss into a summary-judgment motion." *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024)

Alex to the ground, hit him in the neck at least once if not twice, put his knee on the back of Alex's neck, and held him down with his knee on Alex's neck, partially blocking his airway." [*Id*. at 8]. The Complaint alleges that KSP Command Defendants knew about Wright's conduct and did not take corrective action. The Complaint neglect to mention that no "response to resistance" investigation was completed by the Troopers' immediate supervisor, due to the minimal nature of the force used, so no report of the incident was ever forwarded to any higher-level supervisor. [*See, e.g.,* Deposition of Sgt. A. Scott Brown, *Hornback v. Czartorski*, U.S. District Court Western District of Kentucky (Louisville), Case no.: 20-cv-00703-RGJ-LLK, R. 23, at 15-17 (Excerpt attached hereto as Exhibit B)]. The Complaint neglects to mention how the incident was allegedly reported to the KSP Command Defendants and does not mention that neither Commissioner Burnett nor Lt. Col. Rogers was in his current position on April 9, 2020. [*See, e.g.,* Exhibit A].

Next, the Complaint alleges that, on March 12, 2024, Defendant Wright pulled over John Millet, III, removed him from his car, threw him to the ground and twice "deployed a taser." [*Id*. at 12]. The Complaint says that "either Defendant Farris or Riley was present at the scene and was present in relation to the follow-up on use of force investigation and covered it up." [R. 1 at 12 (emphasis added)]. The Complaint alleges that the KSP Command Defendants knew about Wright's conduct and did not take corrective action, but does not explain how they had such knowledge if one or the other of the remaining Defendants "covered it up." [*Id*.]. Again, the Complaint neglects to mention how the incident was reported to the KSP Command Defendants, or even that Deputy Commissioner White was not employed by the KSP on that date, having retired on May 1, 2020 and having been reappointed on July 2, 2024. [*See, e.g.,* Exhibit A at 1-2].

The Complaint notes that, in September of 2021, Wright was awarded KSP Post 4 Trooper of the Year. [R.1 at 10]. The Complaint alleges the award was given to Wright "after the Halcomb,

3

Davis, and Hornback incidents in 2020, and with knowledge that Wright had perjured himself about his involvement with gratuitous excessive force in the Hornback lawsuit[.]" Again, the Complaint does not detail how the KSP Command Defendants allegedly knew about the incidents, which were, in some cases, not reported to supervisors and, in other cases, were allegedly "covered up," according to the Complaint. [R. 1 at 12].

Finally, as to the Plaintiff in this action, the Complaint alleges that Trooper Wright stopped the Plaintiff on June 19, 2024, for a seatbelt violation. [R. 1 at 13-16]. Like the other cases, the Complaint alleges that Wright threw Blevins to the ground and "tased the Plaintiff at least four times while shouting commands at him." [*Id.* at 14-15]. The Complaint continues with a detailed description of the Plaintiff's version of events. The Complaint says that: "Trooper Wright charged the Plaintiff with multiple crimes and included multiple false statements in the narrative of plaintiff's citation in an apparent attempt to justify the unreasonable force that he used that day. All charges that were brought against the Plaintiff arising out of this incident were dismissed on June 5, 2025." [R. 1 at 16]. The Complaint does not mention that the Hardin County Grand Jury found probable cause for all of those charges on August 29, 2024, when it indicted the Plaintiff on all counts. *See*, *Commonwealth vs. Blevins, Dawson,* Hardin Circuit Court, Case No. 24-CR-00580. The case was dismissed by motion of the Commonwealth, after Defendant Wright was indicted in relation to other cases. [*United States v. Czartorski, et al,* U.S. District Court, Western Dist. Of Ky., Indictment No. 3:25-cr-00030-RGJ].

The Complaint sues Commissioner Phillip Burnett, Jr. (Comm'r Burnett), Deputy Commissioner Chad White (Dep. Comm'r White), and Lieutenant Colonel Michael Rogers (Lt. Col. Rogers) in both their individual and official capacities. All of these Defendants are sued solely

4

under the premise of supervisory liability. The Complaint makes no allegation of actual personal involvement in any of the incidents alleged regarding any of the KSP Command Defendants.

The Plaintiff does not allege that the KSP Command Defendants had ever heard of Mr. Blevins or had any prior knowledge that Defendant Wright would be engaging in a traffic stop of Plaintiff. The Complaint does not even allege that the KSP Command Defendants were in Hardin County or on duty on March 12, 2024. It also fails to explain how Deputy Commissioner White, who was not a KSP employee at the time, was involved. After describing the alleged actions of Trooper Wright, the Plaintiff conclude that KSP Command "'implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of' Defendant Wright, and thus the incident with Plaintiff was casually connected to this deliberate indifference[.]" [*See, e.g.*, R. 1 at 19].

The Plaintiff repeatedly concludes that each supervisor was aware of the excessive force incidents," in the other cases, citing *Hornback v. Czartorski*, 2022 U.S. Dist. LEXUS 137779 (WDKY 2022). [R.1 at 9, 18]. However, *Hornback v Czartorski* was terminated by a settlement between the parties, not a determination that any of the Troopers involved had violated Hornback's civil rights. *Id*. The Hornback incident was not even the subject a response to resistance investigation by the Troopers' supervisor, so it wasn't reported to the KSP command staff in 2020 and, had it been it would have been reported to the people in those positions in 2020, such as former commissioner Brewer. [*See, e.g.,* Deposition of Sgt. A. Scott Brown, *Hornback v. Czartorski*, U.S. District Court Western District of Kentucky (Louisville), Case no.: 20-cv-00703-RGJ-LLK, R. 23 at 16-17].

The Plaintiff mentions that "[o]n March 4, 2025, the Defendant, James Cameron Wright, was indicted along with Thomas Czartorski and Jarrod Lewis in Indictment No. 3:25-CR-30-

5

CHB[,]" but that indictment obviously came long after the alleged use of excessive force against the Plaintiff. {R. 1 at 16].

The conclusion that the KSP Command Defendants were aware of the alleged use of excessive force by Wright is repeated stated without a stated factual basis for how or when that occurred. The Plaintiff merely assumes the facts and sets out his bare conclusion. Given that Burnett and Rogers were not in their present positions during the 2020 incidents and Deputy Commissioner White was not even a state employee when Blevins was arrested, the Plaintiff appears to assume, first, that the prior uses of force were excessive and, second, that the KSP Command Defendants were aware.

## STANDARD

Dismissal is proper under Federal Rule of Civil Procedure 12(b) when, after resolving all doubts and inferences in favor of the non-moving party, it is evident that no relief may be granted consistent with the allegations in the complaint. *Miller v. Currie*, 50 F.3d. 373, 377 (6th Cir. 1995); *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Blackburn v. Fisk University*, 443 F.2d. 121, 123 (6th Cir. 1971). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Mezibov v. Allen*, 411 F.3d. 712, 716 (6th Cir. 2005). When evaluating a motion to dismiss under FRCP 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Plaintiff asserts that each Defendant was in Wright's chain of command, and thus in a supervisory role, at all relevant times. Whether each Defendant was in fact Wright's "supervisor"

at the relevant time periods is central to the Plaintiff's claims. Thus, the personnel history of each Defendant is referred to in the Complaint and are central to Plaintiff's claims. This Exhibit may be considered by the Court without converting the FRCP 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment under FRCP 12(d) and FRCP 56.

Applying the above standards to the present case, Plaintiffs' Complaint fails to state a claim upon which relief may be granted or for which the Court has subject matter jurisdiction due to immunity.

## ARGUMENT

### a) THE COMPLAINT DOES NOT ALLEGE FACTS THAT SHOW THE PLAINTIFF'S RIGHTS WERE VIOLATED UNDER THE FOURTEENTH AMENDMENT

The Complaint asserts that the use of force against Plaintiff only occurred during the traffic stop and seizure of Blevins. "All claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment". *Graham v. Connor*, 490 U.S. 386 (1989). The Fourteenth Amendment's due process clause, which protects against excessive force, has historically only applied to pretrial detainees. See *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Plaintiff does not assert that he was a pretrial detainee at any point during the alleged altercation with Wright. Thus, Plaintiff's Fourteenth Amendment claim fails as a matter of law as applied to all Defendants and must be dismissed.[2]

### b) PLAINTIFF'S CLAIMS AS TO KSP COMMAND ARE BARRED BY QUALIFIED IMMUNITY

---

[2] Presuming that the Plaintiff cites U.S. Const amend. XIV for more than to note that the Fourth Amendment is enforceable against the states by virtue of Fourteenth Amendment incorporation. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961).

Plaintiffs may generally sue government officials acting under color of state law in their individual capacities, under § 1983, but the doctrine of qualified immunity shields officials from liability "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id*.

"After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burgess v. Fischer,* 735 F.3d 462, 472 (6th Cir. 2013)). A qualified immunity analysis requires a two-prong inquiry: (1) whether the facts alleged show that a constitutional right has been violated; and (2) whether that right was clearly established at the time of a defendant's offending conduct. *Peatross*. In addition to that, Plaintiff must show that the supervisor's active unconstitutional conduct caused the alleged violation. *Peatross*, at 242.

i. **BLEVINS'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED**

For supervisory liability, under § 1983, the law requires "more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct" *Peatross* (citing *Phillips v. Roane County, Tenn.*, 534 F.3d 531 (6th Cir. 2008)) (Plaintiff must point to a specific action of each individual supervisor to defeat qualified immunity). A Supervisor cannot be held liable simply because he was in charge of overseeing a subordinate who violated the constitutional

rights of another. *Id*. (citing *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)). A mere failure to act will not suffice. *Id*. Supervisory liability requires "active unconstitutional behavior" on the part of the supervisor. *Id*. (citing *Bass v. Robinson*, 167 F.3d 1041 (1999)). A mere failure to act, even in the face of a statistical pattern of incidents of misconduct, is not sufficient to establish liability. *Hays v. Jefferson County, KY*, 668 F.2d 869 (6th Cir. 1982).

A supervisor is not liable pursuant to §1983 unless the supervisor either "encouraged the specific incident of misconduct or in some other way directly participated in it". *Campbell v. City of Springboro, Ohio*, 700 F.3d 779 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999)). At minimum, the Plaintiff has the burden of showing that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Id*. The Complaint does not allege that KSP Command "encouraged the specific incident of misconduct" involving Wright and Blevins. It merely concludes, without factual support, that the KSP Command Defendants were even aware that Wright had used excessive force, if he did. The award for being Trooper of the Year, in 2021, on the other hand, implies that they were not aware. [R. 1 at 10]. The Plaintiff must show that KSP Command acted in some other way to directly participate in the conduct of Wright, to state a claim.

In *Peatross*, the plaintiff sued the Director of the Memphis Police Department (MPD), Toney Armstrong (Armstrong), under the theory of supervisory liability. Just as in this case, the *Peatross* complaint alleged that Armstrong failed to supervise and train officers to avoid excessive use of force, failed to investigate allegations of excessive force, and attempted to cover up officers' use of excessive force. However, the complaint in *Peatross* "goes a step further" alleging there had been fifty-four (54) police shootings in the years leading up to the lawsuit and that Armstrong

previously acknowledged "a dire need to review and improve police department operations". Armstrong also previously noted that MPD needed "to improve its disciplinary process".

Lastly, only a few months before the shooting, the Mayor of Memphis publicly admonished Armstrong and MPD as "unacceptable" regarding training and accountability standards. *Peatross*, at 243. Based on these specific facts, the Court concluded that Armstrong "did more than play a passive role in the alleged violations or show a mere tacit approval of things going on". *Id*. The Court also determined that Armstrong's "rubber stamping" of the MPD officer's misconduct could reasonably be expected to give rise to the sort of injuries that occurred. *Id*.

To contrast, in *Does v. Whitmer*, 69 F.4th 300 (6th Cir. 2023), the plaintiff sought to hold "high-ranking Michigan officials", including the Governor of Michigan and the Director of the Michigan State Police (MSP), liable for failing to stop misconduct of MSP in enforcing Michigan's Sex Offender Registration Act (SORA), that was previously deemed unconstitutional in two (2) previous cases. The plaintiffs alleged that the director of MSP knew that officers were continuing to enforce an unconstitutional statute, failed to terminate the application of SORA, and this encouraged and implicitly authorized the continued violations of the plaintiffs' rights. *Id*.

In this case, the MSP directors had *two (2)* prior 6th Circuit Court of Appeals decisions telling them that the continued enforcement of SORA was unconstitutional. Yet, the statute continued to be applied by MSP officers, who were under the supervision of the MSP Director. The plaintiffs argued that the MSP directors knew about the ongoing unconstitutional conduct of the officers and failed to instruct and train their officers to cease this conduct. The plaintiffs argued that this failure to act "implicitly authorized the continued enforcement of the unconstitutional statute." The Court ruled that these allegations were wholly conclusory, and that a mere failure to act is insufficient to meet the plaintiffs' burden. *Id*., at 309.

10

Here, the Complaint does not allege that the supervisory Defendants personally did anything to directly contribute to a violation of the Plaintiff's rights. Rather, the Plaintiff alleges that the KSP Command Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of Wright" and "the incident with Plaintiff was causally connected". [Id. at 19]. These are all entirely conclusory allegations. Plaintiff simply says all the right words without giving any context or factual basis for his conclusions. Even if the Court finds that the Complaint has sufficiently plead facts to support Plaintiff's conclusions, the claims fail under the *Peatross* and *Does* analysis.

The Complaint lists "The Justin Halcomb Incident," and concludes that the KSP Command Defendants "signed off on and approved Defendant Wright's use of excessive force," but does not say how it was determined that the force was excessive or when or how the KSP Command Defendants were made aware of it.

The Complaint lists "The Thomas Davis Incident," and concludes that the KSP Command Defendants "signed off on and approved Defendant Wright's use of excessive force," but does not say how it was determined that the force was excessive or when or how the KSP Command Defendants were made aware of it.

The Complaint lists "The Alex Hornback Incident," but does not say how it was determined that the force was excessive or when or how the KSP Command Defendants were made aware of it. We already know that not even Wright's first level supervisor, Sgt. Brown, was aware of any significant use of force in that matter, so it's clear that no report of excessive force was sent up through the chain of command. [Deposition of Sgt. A. Scott Brown, *Hornback v. Czartorski*, U.S. District Court Western District of Kentucky (Louisville), Case no.: 20-cv-00703-RGJ-LLK, R. 23, at 16-17].

11

The Complaint lists "The John Millet, III Incident," and concludes that the KSP Command Defendants "were each aware of the situation and use of force against Mr. Millett, as well as the pattern of misconduct with respect to Defendant Wright," but does not say how it was determined that the force was excessive or when or how the KSP Command Defendants were made aware of it. [R. 1 at 12].

Unlike in *Peatross*, the Plaintiff here does not allege any significant ongoing misconduct by Wright. In *Peatross*, the plaintiff noted *fifty-four* prior police shootings in the four years leading up to the incident. Here, Plaintiff alleged a mere four incidents, none of which have, to date, been determined to be excessive force. The Court in *Does* found that three prior cases are not satisfactory. *Does*, at 309. In *Peatross*, the plaintiff alleged that both Director Armstrong and the Mayor of Memphis had acknowledged a severe need for changes in officer training and discipline, but failed to implement any changes, thus "rubber stamping" the officer's conduct. Here, the Plaintiff does not allege that any KSP Command Defendants, nor any other governing body, had acknowledged Wright's misconduct involving alleged excessive force or the need for change in training or disciplining officers. There is no indication that Wright's conduct had ever been determined to be excessive or violate policy, prior to Mr. Blevins arrest Rather, Plaintiff asserts that KSP Command Defendants failed to act by failing to take corrective action against Wright. This mere "failure to act" argument was rejected by the Court in *Does*.

      **ii.**    **PLAINTIFF CANNOT MEET HIS BURDEN REGARDING CAUSATION**

The alleged timeline alone defeats any causation argument. In *Peatross*, the fifty-four police shootings were an ongoing issue in the years leading up to the incident. The acknowledgment of the need for change by Director Armstrong and admonishment by the Mayor occurred a mere few months prior to the police shooting. In contrast, the Plaintiff here only points

to incidents of alleged excessive force that occurred roughly three to four years prior to the incident with Blevins. Then, nearly eighteen months after those incidents, Wright received an award and an accompanying speech. Again, this happened nearly three years prior to the alleged incident with Blevins. The significant lack of any temporal proximity, paired with the conclusory nature of the Complaint, defeats any causation argument the Plaintiff can make. It is impossible for Plaintiff to meet his burden under the facts alleged in the complaint.

### iii. KSP COMMAND DEFENDANTS DID NOT VIOLATE PLAINTIFF'S RIGHTS

Plaintiff's claims necessarily rely on the assumption that the listed KSP Command Defendants were in Wright's chain of command "at all relevant times" and thus had a duty to take corrective action against Wright in the prior instances. However, KSP personnel files, attached as Exhibit A, prove that is not the case. To begin, Dep. Comm'r White was not even employed by KSP in June of 2024, when the alleged incident between Blevins and Wright took place. Dep. Comm'r White was appointed to his role in July of 2024. [Exhibit A at 1-2].

The remaining Defendants were employed by KSP, but in different roles outside of during the three (3) alleged incidents in 2020, which Plaintiff uses to form the basis of the failure to take action claims. Commissioner Burnett was employed as the Lieutenant Colonel of the Office of Operations until being appointed Commissioner on November 5, 2020. [Exhibit A, at 3]. Lt. Col. Rogers was employed as the Major of the Division of Special Enforcement until being promoted to Lieutenant Colonel on May 1, 2021. [*Id*. at 3].

Plaintiff's allegation that Wright stated the Commissioner "has my back" in April of 2020 would not be relevant to Comm'r Burnett, because he was not the Commissioner of KSP at the time. It is readily verifiable from numerous news sources that Rodney Brewer was the commissioner of KSP until November 5, 2020. Since they were in different roles at this time, these

13

Defendants had no duty to supervise, investigate, or take corrective action with regard to Trooper Wright. This further defeats any causation argument Plaintiff can make. Even if the KSP Command were in Wright's chain of command and had a duty to supervise, they are so far removed from Wright, that the Plaintiff cannot meet his burden. Thus, Plaintiff's entire lawsuit against the KSP Command Defendants comes down to the sole alleged incident between Wright and Blevins. For the reasons discussed above, one single instance of alleged misconduct cannot form a basis for Plaintiff to overcome qualified immunity.

### c) PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY AND THE ELEVENTH AMENDMENT

Plaintiff sues the KSP Command Defendants both individually and in their official capacities. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Carter v. Porter*, 617 F.Supp.2d 514 (E.D. Ky 2008). As such, it is no different than a suit against the State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). The Eleventh Amendment bars such suits. *Id.*, at 66. The state is not a person under 42 U.S.C. 1983. *Id.*, at 71. The KSP Command Defendants cannot be sued for monetary damages. *Carter*, at 517. Likewise, "where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against the defendant." *Kentucky v. Graham*, 473 U.S. 159 (1985). Thus, the Plaintiff has no avenue for relief against the KSP Command Defendants in their official capacities and those claims must be dismissed. *Id*.

Furthermore, the Plaintiff's claims do not meet the exception created by *Ex Parte Young*, 209 U.S. 123 (1908). In determining whether a claim meets the *Ex Parte Young* exception, and thereby avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward

inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997). Here, the Plaintiff alleges that a single instance of excessive force occurred on March 12, 2024 and violated Blevins's Fourth and Fourteenth Amendment rights. While the Plaintiffs emphasize that they seek injunctive relief against the KSP Command Defendants in their official capacity, this alone is insufficient to meet the *Ex Parte Young* exception:

> This doctrine applies only when the plaintiff sues for "prospective [injunctive] relief to end a continuing violation of federal law. *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). If the complaint fails to "make clear what those ongoing violations are," the exception does not apply. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Nor does the exception exist for injunctive relief "based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to" the plaintiff. *Gean v. Hattaway*, 330 F.3d 759, 776 (6th Cir. 2003).

*Morgan v. Board of Professional Responsibility of the Supreme Court of Tennessee, et al.*, 63 F.4th 510, 515 (6th Cir. 2023).

The Complaint seeks declaratory and injunctive relief "enjoining <u>further</u> violations of Plaintiff's rights or the rights of others by Defendants". [Complaint, R. 1, at 20 (emphasis added)]. However, the Complaint also clearly states that the single alleged incident between Wright and Blevins began and ended on June 19, 2024. The Complaint makes no allegations of continuing conduct, or even specific events happening since June of 2024. The incident of alleged misconduct in this case is therefore a past act, not a continuing violation, and the Plaintiff is using declaratory and injunctive relief as a disguise to seek monetary damages. "Compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Bailey v. Montgomery*, 433 F. Supp. 2d 806, 811 (E.D. Ky. 2006) (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). Thus, the violation is not ongoing, and the relief

is not prospective, and the claims under § 1983 against the KSP Command Defendants in their official capacities must be dismissed.

### d) ANY CLAIM AGAINST DEPUTY COMMISSIONER WHITE IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Deputy Commissioner White retired from employment with the Kentucky State Police on May 1, 2020. [Exhibit A at 1]. He returned as Deputy Commissioner on July 2, 2024. [Exhibit A at 2].

At the time of Mr. Blevins arrest, on June 19, 2024, Deputy Commissioner White was not employed by the Kentucky State Police and had not been so employed for at least four years. [*Id*.]. Any actions he allegedly took or failed to take that violated Mr. Blevins civil rights would have to be barred by the applicable statute of limitations.

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990).

Although state law establishes the statute of limitations for § 1983 actions, federal law controls the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Federal law establishes that a § 1983 cause of action accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir.2001). In case of Fourth Amendment violations brought under § 1983, the statute of limitations begins to run on the date that the alleged constitutional violations occurred. *See Wallace v. Kato*, 549 U.S. 384 (2007). "A § 1983 claim for excessive

force in effectuating an arrest accrues at the time of arrest." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007).

In this case, the Plaintiff claims his rights were violated on June 19, 2024. Any action or inaction by Deputy Commissioner White that led to that violation the Plaintiff's rights would have to have occurred within one year prior to June 16, 2025, when the Complaint was filed, but the Complaint alleges no wrongdoing after June 19, 2024, and Chad White was not a supervisor or employee of KSP from 2020 until that date. His involvement, if any, could only have occurred prior to May 1, 2020, when he retired. The Plaintiff's complaint is time-barred as to Chad White.

## CONCLUSION

The Complaint in this action does not allege sufficient involvement by KSP Command Defendants to support a claim under § 1983. The Plaintiff relies on bare conclusions, with no supporting facts that would show that the Defendants took any active role in the violation of Blevins's Fourth Amendment rights. The Plaintiff cannot meet his burden to overcome qualified immunity for the KSP Command Defendants, especially when the personnel records are taken into consideration. In addition, any possible claim against Chad White is barred by the applicable statute of limitations, because Deputy Commissioner White did not work for KSP at the time of Plaintiff's arrest or for more than four years prior to it. For these reasons, the Complaint fails to state a claim upon which relief can be granted.

**WHEREFORE**, the Defendants, Kentucky State Police Commissioner Phillip Burnett, Jr., Deputy Commissioner Chad White, and Lieutenant Colonel Michael Rogers, respectfully ask the Court to dismiss all claims against them, because the Complaint fails to state a claim upon which relief can be granted, as to these Defendants.

Respectfully submitted,

*/s/ Brenn O. Combs*
Brenn O. Combs, KBA #87656
KENTUCKY STATE POLICE
Legal Office
919 Versailles Road
Frankfort, KY  40601
(502) 782-1800
(502) 573-1636 facsimile
Brenn.Combs@ky.gov
*Counsel for KSP Command Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2025, I electronically filed this document with the Court by using the CM/ECF system, which sent a notice of electronic filing to all counsel of record.

*/s/  Brenn O. Combs*
Brenn O. Combs

2